Peck, J.
delivered the unanimous opinion of the court. This was an indictment tried in the circuit court of Wilson county. The charge laid, was for unlawfully playing at a game of hazard, called faro, for money. The defendant was convicted by a jury, and from the sentence of the circuit judge prosecutes this writ of error. From the record it appears that on the trial it was not clear, whether or not the gaming had been for money or bank notes. The judge was requested to charge the jury, that on this indictment, which charged a playing for money, it was incumbent on the state to prove that gold or silver had been bet — and that proof of a betting for bank notes would not support the indictment. The court refused so to charge, and instructed tire jury, “that if it was proved that the defendant did play at the game of faro, in said county, but bet bank notes only, or counters representing bank notes, that it was betting money, as alleged in the indictment.” This was excepted to.
The words used in the act of assembly of 1824, ch. 5, relied on by the attorney for the state, are, shall bet “for money or other valuable thing.” Bank notes may be, and some of them are, esteemed as “valuable things” — but are they money? The legal definition of the term money, is given by Lord Hale; he calls it the measure of commerce, 1 H. P. C. 188: so also because it is equal in value — bank notes arc neither equal in value, nor are they the measure of commerce. The ideas of every man in the country, will change in a day or an hour, with respect to the value of bank notes, according as they are measured by the unerring standard—gold or silver. So far from being the measure of commerce, it is a lamentable fact, that they are almost always the subject of it. Again, the notes of different banks *132 are not equal in their value. The depressed note of one bank to-day, balanced in the scale of commerce against that of another to-morrow, may have its rise.
The farthest jurists have gone on this subject, is to say, jyia|; notes of certain banks are treated as money or cash—1 Bur. 459; 11 Vez. 662; 2 John. Rep. 459; 1 John. Ch. Rep. 236—and highly as they may deserve to be treated in those countries, they have acquired no such character in our state—Peck’s Rep. 276, MS case published in National Banner No 2; and it is worth remarking, that in all these cases, the character given to bank notes was in civil proceedings, where, to say the least of it, for the sake of justice something could be taken by intend meat.
Here it is the description of a crime given in an indictment — a gaming for money. We do not perceive, in point of turpitude, that there is any difference between gaming for money, or any other valuable thing: but that is aside from the question, whether the party has not a right to demand the benefit of that principle, which requires certainty in the description of the crime charged against him. He ought not to be circumvented when called on to answer. By the charge he is to know what will be the nature of the evidence against him, and consequently, be prepared to meet the particular fact put in dispute — nor can any thing be received, but what bears upon that fact — Peak, Norris’ edition 10, and the numerous cases from the American reporters there referred to; 2 E. P. C. 223; Archbald’s C. Pleading, 63. On an indictment for larceny for stealing shoes, the proof must correspond with the charge — and proof that he stole boots will not support the issue. So in civil proceedings in an action for money had and received, proof that bank notes had been received, will not support the declaration, unless proof he made, that he has turned them into money, though it may be presumed, unless the) be produced on the trial—Noys v. Price; 3 Select Cases, 242; Doug. Rep. 138.
But it is urged, that this statute in its provisions is to be construed not as a penal, but as a remedial statute — and therefore must be so taken as to suppress the mischief. The *133 result will be the same whether this be considered as a remedial or penal statute. Are we, because the statute remedial, to relax the rules of evidence? We think not. Gambling is the crime; and the charge in the indictment has fixed its character by pointing out its object, money. To that the evidence must be confined — and this is the rule on all remedial statutes. Gaming may be committed many ways — so it may have for its grasp many objects — and failure in either the one or the other will not sustain the indictment — 1 Chitty, 228.
There is no similiter formally entered, as shown by this record, and this is argued as another objection. As the case must go back to the court from whence it came, we do not deem it essential to give an opinion on this point. That defect, if it be one, may be cured in the court below.
The reversal of this case, may not ultimately defeat the state from enforcing punishment for the commission of crime. Much as we could wish to see a vice hunted from society, which has so long been the bane of it — and willing as we are, to go hand in hand with the legislature, in a measure so laudable, — still we can be her handmaid no farther, than established forms, and unerring rules have dictated, as well in this as in cases of greater magnitude.
Reverse the judgment and bind the plaintiff to appear before the circuit court of Wilson county.
Judgment reversed.